C. G. DAVIS ET AL., Plaintiffs and Appellants, v. IOWA FUEL COMPANY ET AL., Defendants.

**Corporations:** INSOLVENCY: DISTRIBUTION OF ASSETS: PREFERENCE. An insolvent corporation surrendered control of its assets to its existing creditors who undertook to continue the business through a trustee, in accordance with an agreement between themselves and the corporation to that effect. *Held,* that the new creditors of the trustee, on distribution of the assets of the corporation, were entitled to preference over the original creditors of the corporation. And this was true as to a creditor who had loaned money to the corporation prior to the agreement, and who was a party to the agreement.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

TUESDAY, OCTOBER 19, 1909.

THIS is an appeal from an order of distribution in a receivership proceeding. The facts appear in the opinion. —*Affirmed.*

*Sullivan & Griffin,* for appellants.

*Robinson & McHugh,* for appellees.

EVANS, C. J.—1. On July 19, 1906, the defendant Iowa Fuel Company was an insolvent corporation. It had been engaged in the retail coal business at Sioux City for some time next preceding such date. On such date it. was indebted to various creditors in a total amount of about $4,000, and its total assets had a value of about $2,000. On the date named all the then existing creditors of the corporation entered into an agreement with each other and with such corporation, whereby it was proposed to conduct the business of the corporation in such a way as to enable it in time to pay the creditors involved. It was "therefore agreed by all of the parties to this agreement that the business of the Iowa Fuel Company with all of its property and assets of every kind be placed in the hands of C. S. Graham, who is agreed upon as a trustee . . . to take possession and charge of said business and of the property and assets belonging thereto, and conduct the same for a period of one year from this date." It was provided in such contract that the trustee should receive $75 per month, that he should execute to the creditors a bond in the sum of $1,000, and that one Fields should be the agent of the creditors "to supervise the conduct of the business as carried on by said trustee," and "to decide the amount of expense which may be incurred by the said trustee in carrying on said business." It was also provided, "whenever in the judgment of said Field there are sufficient funds on hand over and above the amount necessarily expended for current expenses, the same shall be distributed among

the different creditors *pro rata.*" It was also provided that all funds should be deposited in the name of "C. S. Graham, trustee," and that all disbursements should be made by checks drawn in the same way. From such date the business was conducted by the trustee in pursuance of such contract. As such trustee he purchased coal from the appellees in large quantities, and sold the same in the course of trade. The joint enterprise so undertaken by the creditors did not prove successful, and a receiver was finally appointed for the corporation. The person who was so appointed as receiver was W. F. Tuttle, one of the creditors who had entered into the agreement of July 19, 1906. He converted the assets of the corporation into money. This controversy arose over the final order of distribution. Those creditors whose claims of indebtedness were incurred by Graham, trustee, in the conduct of the business since July 19, 1906, demanded that the assets in the hands of the receiver be first applied to the payment of their claims so incurred by the trustee. The trial court so ordered. The other creditors have appealed from such order.

The case is so unique in its facts that no precedents can be cited to aid us. On principle, however, we are well satisfied with the conclusion reached by the trial court. It is urged by the appellants that all creditors should stand on an equality. Their argument is that Graham was the former manager of the Iowa Fuel Company and one of its principal stockholders, and that he conducted the business as before, and that there was therefore no substantial change, and that the new creditors extended credit to the corporation as the former creditors had done. It is argued that the former creditors simply forbore litigation, and that they should not be penalized therefor. But the premise of fact upon which such argument is based is not sustained by the record. The insolvent corporation surrendered its dominion over its property to the creditors who undertook to manage it more economically and successfully

than had previously been done. Their motives were commendable. But the fact remains that they entered into the joint enterprise, and that they put the property and business into the hands of a trustee, who was directly accountable to them, and from whom they required a bond, and to whom they stipulated a compensation. True, they stipulated against personal liability. But they forbore to apply the property to the payment of their claims, and they put it up as a capital for the time being, and sent their trustee into the commercial world to purchase merchandise upon the faith of it. Such purchases of merchandise were absolutely essential to the conduct of the enterprise. No merchandise could have been bought upon the credit of an insolvent corporation except by deception. Surely no fraud or deception was contemplated by the parties. It may be doubted whether the appellees are strictly creditors of the insolvent corporation in the ordinary sense. Certain it is that they are creditors of the trustee, and the trustee was the creation of the appellants. Under the facts appearing here, the elementary principles of equity require that the claims of the appellants be postponed to those which were made in their behalf by their trustee.

II.   It is claimed on behalf of W. F. Tuttle that he became creditor on July 19, 1906, by loaning to the company the sum of $500. It is urged, therefore, that he should be deemed a new creditor to that extent, and should share in the preference ordered. The difficulty with his position is that he loaned the funds to the company prior to the agreement, and that he joined in the agreement as an existing creditor to that extent. He was not, therefore, a creditor of the trustee. Having signed the agreement which created the trust and the trustee as an existing creditor to that extent, he is as much bound by such agreement as any other creditor who signed the same.

III.   It is urged by appellees that the appeal should be dismissed for various reasons pointed out in their argu-

ment. The conclusions above announced render it quite unnecessary to consider these questions.

The order of the trial court is *affirmed.*